## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ ) | |
| INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and ) | |
| SOCIEDAD NACIONAL DE GALÁPAGOS, C.A., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **Court No. 25-00025** |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>COMPLAINT</u>

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Industrial Pesquera Santa Priscila S.A. ("Santa Priscila") and Sociedad Nacional De Galápagos, C.A. ("SONGA") (collectively, "Ecuadorian Respondents" or "Plaintiffs"), by and through their counsel, bring this action and allege and state the following:

## <u>ADMINISTRATIVE DETERMINATION TO BE REVIEWED</u>

1.     Plaintiffs bring this action pursuant to, and in accordance with, Section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)), to contest certain aspects of the final affirmative determination of the U.S. Department of Commerce ("Commerce") in its countervailing duty ("CVD") investigation of frozen warmwater shrimp from Ecuador.  See _Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty Determination_, 89 Fed. Reg. 85,506 (Oct. 28, 2024), and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador (Oct. 21, 2024) ("IDM").  The CVD order was issued on December 26, 2024, in _Frozen Warmwater Shrimp From Ecuador,_

*India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 89 Fed. Reg. 104,982

(Dec. 26, 2024) ("*CVD Order*").

## THE PARTIES

2.      Plaintiffs are producers and exporters of merchandise subject to the *CVD Order*.

Plaintiffs were the only two mandatory respondents in the Commerce investigation that resulted

in the *CVD Order*.

3.      Defendant is the United States of America, acting by and through the U.S.

Department of Commerce.

## JURISDICTION

4.      The Court has jurisdiction over this action under 28 U.S.C. § 1581(c) because this

action was commenced under 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i).

## STANDING

5.      As mandatory respondents, Plaintiffs participated fully in Commerce's

investigation, including by submitting factual information and written argument, as well as by

undergoing Commerce verifications of their submitted information.  As such, they are interested

parties under 19 U.S.C. § 1677(9)(A) and 19 U.S.C. § 1516a(f)(3).  For the same reasons,

Plaintiffs are parties to the proceeding as defined in 19 C.F.R. § 351.102(b)(36).  They have

standing to commence this action under 19 U.S.C. §1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

6.      The *CVD Order*, which is being challenged in this action, was published in the

*Federal Register* on December 26, 2024.  Plaintiffs commenced this action by filing a Summons

on January 22, 2025, which is within 30 days after Commerce's publication of the *CVD Order* in

the *Federal Register*.  Accordingly, this action is timely filed under 19 U.S.C.

§ 1516a(a)(2)(A)(i)(II) and Rules 3(a)(2) and 6(a) of this Court.

## STANDARD OF REVIEW

7.    This Court reviews final determinations issued by Commerce pursuant to 19

U.S.C. § 1671(d) to determine whether they are "unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

8.    The American Shrimp Processors Association ("ASPA") filed a countervailing

duty petition on October 25, 2023, in which it alleged the Government of Ecuador ("GOE") had

provided countervailable subsidies to Ecuadorian producers of frozen warmwater shrimp, and

that imports of that shrimp had caused material injury to the domestic shrimp industry.

Commerce subsequently initiated a countervailing duty investigation in response to ASPA's

petition.  *Frozen Warmwater Shrimp From Ecuador, India, Indonesia, and the Socialist Republic*

*of Vietnam: Initiation of Countervailing Duty Investigations*, 88 Fed. Reg. 81,053 (Nov. 21,

2023) ("*Initiation Notice*").  As part of its initiation procedure, Commerce issued an Initiation

Checklist in which it listed 15 alleged subsidy programs that it intended to investigate.

9.    Following initiation, Commerce selected Santa Priscila and SONGA as mandatory

respondents on the ground that they were the two highest volume Ecuadorian exporters of frozen

warmwater shrimp to the United States in 2022.  The two respondents thereafter filed numerous

questionnaire responses and supplemental questionnaire responses, including responses to new

subsidy allegations ("NSA") filed by ASPA, as well as responses that addressed "other subsidy"

programs that Plaintiffs "self-reported" even though Commerce had not initiated an investigation

of any of them.  The GOE similarly filed numerous questionnaire responses and supplemental

3

questionnaire responses concerning all the original allegations, NSAs, and self-reported "other subsidy" programs.

10.    Commerce established the period of investigation ("POI") as calendar year 2022. *See Initiation Notice,* 88 Fed, Reg. at 81,054.  The POI is the period for which Commerce determined whether and to what extent the Plaintiffs received countervailable subsidies from the GOE.

11.    Commerce published its preliminary determination on April 1, 2024, in which it calculated preliminary countervailable subsidy rates of 13.41 percent for Santa Priscila and 1.69 percent for SONGA.  *See Frozen Warmwater Shrimp From Ecuador: Preliminary Affirmative Countervailing Duty Determination, and Alignment of Final Determination With the Final Antidumping Duty Determination*, 89 Fed. Reg. 22,379 (Apr. 1, 2024) ("*Preliminary Determination"*) and accompanying Decision Memorandum for the Preliminary Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador (Mar. 25, 2024) ("*PDM*").

12.    In the *Preliminary Determination*, Commerce preliminarily determined that the tax benefits, including the income tax rate reduction and Currency Outflow Tax ("ISD") exemptions on imported raw materials, available incident to the Investment Contract program, were *de facto* specific because the Investment Contract program provided benefits to a limited number of users.  *PDM* at 24.

13.    Commerce calculated a countervailable subsidy rate for SONGA that was less than 0.005 percent (i.e., not measurable) for the ISD Exemption on Imported Raw Materials available under the Investment Contract program based on information timely reported by SONGA throughout its questionnaire responses.  *Id.* at 26.

14.     On April 25, 2024, Commerce published its Amended Preliminary Determination, which corrected "significant ministerial errors" for Santa Priscila and SONGA that Commerce made in its initial Preliminary Determination. *See Frozen Warmwater Shrimp From Ecuador: Amended Preliminary Determination of Countervailing Duty Investigation*, 89 Fed. Reg. 31,722 (Apr. 25, 2024) and accompanying Preliminary Ministerial Error Memorandum (Apr. 19, 2024). Commerce corrected Santa Priscila's originally calculated preliminary countervailable subsidy rate of 13.41% to 2.89%. *Id.* at 31,723. In that same amended preliminary determination, Commerce also corrected its preliminary finding that SONGA would be subject to a cash deposit rate of 1.69 percent. Commerce instead preliminarily determined that the 1.69 percent combined countervailable subsidy rate calculated for SONGA constituted a *de minimis* margin for which SONGA owed no cash deposits because Ecuador was a developing country to which a *de minimis* margin of 2.00% applied. *Id.* Finally, Commerce recalculated the preliminary countervailable subsidy rate applied to "All Other" Ecuadorian exporters to 2.89 percent to reflect changes to the preliminary countervailable subsidy rates calculated in the Preliminary Determination.

15.     On July 12, 2024, Commerce issued a *Post-Preliminary Determination*, in which it addressed ten alleged subsidy programs that it had not addressed in the *Preliminary Determination* and NSAs on which Commerce initiated an investigation. Based upon the preliminary determinations made in its *Post-Preliminary Determination*, Commerce calculated a revised combined preliminary countervailable subsidy rate of 2.97 percent for Santa Priscila and 1.76 percent (i.e., *de minimis*) for SONGA.

16.    Between July 15, 2024 and July 24, 2024, Commerce conducted verifications of the questionnaire responses and supplemental questionnaire responses filed by Santa Priscila, SONGA, and the GOE concerning certain programs subject to investigation.

17.    On September 16, 2024, Ecuadorian Respondents, the GOE, and the ASPA submitted case briefs for Commerce's consideration prior to issuing the *Final Determination*.[1]  In their case brief, Plaintiffs made various arguments for Commerce's consideration, including that: (a) the income tax benefits and ISD exemption benefits available under the Investment Contract Program are not *de facto* specific; and (b) the Department should have accepted minor corrections related to ISD exemptions on imported raw materials presented by SONGA at verification.

18.    On September 23, 2024, Ecuadorian Respondents, the GOE, and the ASPA submitted rebuttal briefs responding to arguments raised in case briefs filed by other interested parties.  In their rebuttal brief, Plaintiffs made various arguments for Commerce's consideration, including that:  (a) if Commerce did not accept minor corrections present by SONGA at verification related to ISD exemptions on imported raw materials, it should apply benefit information reported by the GOE as neutral facts available; (b) if Commerce does apply facts available with an adverse inference ("AFA") to SONGA to determine benefits received under the ISD exemptions on imported raw materials program available under SONGA's investment contract, Commerce's practice requires that it apply the calculated rate for the nearly identical ISD refund on purchase of inputs program.

---

[1] On October 11, 2024, Ecuadorian Respondents and the GOE refiled their case and rebuttal briefs, at Commerce's instruction, after Commerce rejected the case and rebuttal briefs initially filed on September 16 and 23, 2024, respectively.

19.    On September 26, 2024, Commerce issued a Second Post-Preliminary Determination in which it addressed certain subsidy programs that had not been addressed in the *Preliminary Determination* or in the *Post-Preliminary Determination*. These programs included: (a) the Annual Motor Vehicle Tax Reduction ("AMVTR"); (b) the Youth Employment Program – Article 16 of the Labor Law; and (c) the Income Tax Exemption on Time Deposits and Other Fixed Income Securities. ("2nd Post-Preliminary Analysis Memo").

20.    In the *Second Post-Preliminary Determination*, Commerce preliminarily determined that the AMVTR program is *de facto* specific based on its conclusion that Santa Priscila received a disproportionate amount of benefit under the program because Commerce concluded that the amount Santa Priscila reported receiving was many times greater than the average amount received by other program recipients in Ecuador. 2nd Post-Preliminary Analysis Memo at 13.

21.    In the *Second Post-Preliminary Determination*, Commerce preliminarily applied AFA to determine the benefits received under the AMVTR program by Produmar, Santa Priscila's cross-owned affiliated shrimp farmer, SONGA, and Naturisa, SONGA's cross-owned affiliated shrimp farmer. However, Commerce preliminarily calculated a countervailable benefit of 0.04 percent for Santa Priscila under the same AMVTR program based on information reported by Santa Priscila that Commerce verified. As a result of the determinations in the *Second Post-Preliminary Determination*, Commerce preliminarily applied a CVD rate of 0.08 percent under the AMVTR program to Santa Priscila and its cross-owned affiliates including Produmar, and a CVD rate of 0.04 percent under the AMVTR program to SONGA and its cross-owned affiliates including Naturisa.

22.     Based on Commerce's determinations in the September 26th Second *Post-Preliminary Determination*, Commerce calculated a revised combined preliminary countervailable subsidy rate of 3.10 percent for Santa Priscila and 1.86 percent (i.e., *de minimis*) for SONGA.

23.     On October 3, 2024, Plaintiffs and the petitioner submitted a second set of case briefs regarding Commerce's preliminary determinations in the *Second Post-Preliminary Determination*.  In their second case brief filed in reference to the programs considered in the *Second Post-Preliminary Determination*, Plaintiffs made various arguments for Commerce's consideration, including that: (a) the AMVTR program is not *de facto* specific; and (b) that Commerce unlawfully applied AFA to calculate benefits for Produmar, SONGA, and Naturisa under the AMVTR program.

24.     On October 7, 2024, Plaintiffs and the petitioner submitted a second set of rebuttal briefs responding to arguments raised by interested parties in relation to Commerce's determinations in the *Second Post-Preliminary Determination*.  In the rebuttal brief filed in reference to issues addressed in the *Second Post-Preliminary Determination*, Plaintiffs made various arguments for Commerce's consideration, including that, if Commerce continues to apply AFA to SONGA for benefits received under the AMVTR program, it should continue to apply its AFA rate selection hierarchy to apply the rate calculated for Santa Priscila (i.e., 0.04 percent) for benefits received under the AMVTR program to SONGA for the identical program.

25.     On October 16, 2024, Commerce conducted a public hearing with legal representatives of Plaintiffs and the petitioner in attendance.

26.     On October 28, 2024, Commerce published the *Final Determination* in the countervailing investigation of frozen warmwater shrimp from Ecuador in which it calculated a

net countervailable subsidy rate of 3.57 percent for Santa Priscila and 4.41 percent for SONGA. *See Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Oct. 28, 2024) ("*Final Determination*") and accompanying Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador (Oct. 21, 2024) ("*IDM*").

27.    Plaintiffs challenge several, but not all, of Commerce's separate final subsidy margin calculations, as described below.  In summary, Plaintiffs do not challenge any separate subsidy margins for either Santa Priscila or Songa that were equal to or less than 0.3%.

## STATEMENT OF CLAIMS

### COUNT ONE

28.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 27.

29.    Commerce found that tax benefits under the Investment Contract program were *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(I) because "{t}he actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number."  *IDM* at 50-51.  Commerce found that the companies that benefited from this program "represent a very small segment of the Ecuadorian economy."  *Id.* at 51.  To support these conclusions, Commerce compared the number of the Ecuadorian companies that entered into investment contracts in 2019, 2020, 2021, and 2022 to the total number of companies that were registered in Ecuador in each of those years.

30.    Commerce's determination that the tax benefits under the Investment Contract program was *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(I) was not supported by substantial evidence and was otherwise not in accordance with law.

**COUNT TWO**

31.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 30.

32.     Commerce found that it was unable to conduct a disproportionality analysis to determine whether benefits under the AMVTR program were *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(III) because it determined that Santa Priscila and SONGA did not report their respective POI subsidy usage under AMVTR program. *IDM* at 51.  Commerce applied AFA to determine that Santa Priscila and SONGA received disproportionate benefits under the AMVTR program. *Id.*

33.     Commerce unlawfully ignored information reported by the GOE that allowed it to determine whether Santa Priscila or SONGA received disproportionate benefits under the AMVTR program and instead unlawfully applied AFA to conclude that tax benefits under the AMVTR program were *de facto* specific.

34.     Commerce's determination that the tax benefits under the AMVTR program were *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(III) was not supported by substantial evidence and was otherwise not in accordance with law.

**COUNT THREE**

35.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 34.

36.     Commerce applied AFA with respect to SONGA, Produmar, and Naturisa to calculate benefits received under the AMVTR program.  IDM at 77.  Commerce declined to accept minor corrections presented by Produmar, SONGA, and Naturisa at verification related to benefits received incident to the AMVTR program. *IDM* at 10.  Commerce concluded that the corrections to AMVTR benefits presented by Produmar, SONGA, and Naturisa at verification were not "minor" in nature.  Therefore, Commerce unlawfully rejected the corrected data on

AMVTR benefits presented by Produmar, SONGA, and Naturisa at verification. Commerce found that Produmar, SONGA, and Naturisa failed to cooperate to the best of their ability by not providing timely usage information under the AMVTR program. *Id.*

37.    Commerce's determination that the corrected data on AMVTR benefits received by Produmar, SONGA, and Naturisa, as presented at verification, were not "minor" corrections is not supported by substantial evidence and was not in accordance with law.

## COUNT FOUR

38.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 37.

39.    Commerce determined that it erred in using the net subsidy rate calculated for Santa Priscila to calculate the AFA rate for Santa Priscila and its cross-owned affiliate, Produmar, under the AMVTR in the *Second Post-Preliminary Determination*. *IDM* at 77. Commerce also determined that it should not have used the benefits calculated for Santa Priscila to calculate the benefits calculated for Santa Priscila under the AMVTR program to determine the AFA rate applied for SONGA, and its cross-owned affiliates, under the AMVTR program in the *Second Post-Preliminary Determination*. *Id.* at 78. Commerce determined that it lacked complete benefit information for the entire Santa Priscila cross-owned entity, and Commerce declined to use what it concluded was incomplete benefit information, which it acknowledged was timely reported, to calculate an AFA rate for Santa Priscila's cross-owned affiliate, Produmar, and for SONGA, and its cross-owned affiliate, Naturisa. *Id.*

40.    Despite Santa Priscila's timely reporting of all tax benefits it received under the AMVTR program during the POI in the form and manner requested, and that the benefit amounts reported by Santa Priscila were verified by Commerce, Commerce unlawfully ignored the reported benefit information and declined to apply the first step of its AFA rate selection

hierarchy in CVD investigations (i.e., the highest calculated rate for the AMVTR program in the instant investigation).  Instead, Commerce unlawfully applied the third step of its AFA rate selection hierarchy in CVD investigations (i.e., the highest calculated rate for a similar program) to calculate benefits for Santa Priscila, and its cross-owned affiliate, Produmar.  For these reasons, the rate applied to Santa Priscila, and its cross-owned affiliates, for benefits received pursuant to the AMVTR program was not supported by substantial evidence and were otherwise not in accordance with law.

41.    Commerce also unlawfully applied the third step of its AFA rate selection hierarchy in CVD investigations (i.e., the highest calculated rate for a similar program) to calculate benefits for SONGA, and its cross-owned affiliate, Naturisa, when Commerce should have applied the first step of its AFA rate selection hierarchy in CVD investigations (i.e., the highest calculated rate for the AMVTR program for Santa Priscila).  For these reasons, the rate applied to SONGA, and its cross-owned affiliates, for benefits received pursuant to the AMVTR program was not supported by substantial evidence and were otherwise not in accordance with law.

42.    Commerce's application of the unduly punitive and dissimilar calculated rate for the *income* tax exemption on new productive investments received by Santa Priscila, and its cross-owned affiliate, Produmar (i.e., 1.38 percent) as AFA to calculate  benefits received by Santa Priscila, SONGA, and their respective cross-owned affiliat4es, under the *AMVTR program* was not supported by substantial evidence and was not in accordance with law.

## COUNT FIVE

43.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 42.

44.    Commerce declined to accept minor corrections presented by SONGA at verification related to ISD tax exemptions received in 2022 on imported inputs received incident to its investment contract program. *IDM* at 71. Commerce concluded that corrected 2022 ISD tax exemptions on imported inputs presented by SONGA at verification were not "minor" in nature. *Id.* Commerce found that the revised 2922 ISD tax exemptions on imported inputs data reported by SONGA at verification was based on numerous transactions and assets, which Commerce found would have been unduly burdensome to verify on the spot. *Id.* Therefore, Commerce rejected the corrected 2022 data on ISD tax exemptions on imported inputs presented by SONGA at verification.

45.    Commerce's determination that the corrected data on ISD tax exemptions on imported inputs received incident to SONGA's investment contract in 2022, as presented by SONGA at verification, were not "minor" corrections at verification is not supported by substantial evidence and was not in accordance with law.

## COUNT SIX

46.    Plaintiffs hereby reallege and incorporate paragraphs 1 through 45.

47.    SONGA reported the same value of ISD tax exemptions on imported inputs received incident to its investment contract throughout all of its questionnaire responses. In its May 16, 2024, supplemental questionnaire response, SONGA reported the value of imported goods that were approved under its investment contract during 2021 in the narrative of its response and provided an exhibit calculating ISD tax exemptions on imported inputs received incident to its investment contract in 2021. Commerce failed to inform SONGA that the data submitted in its responses was deficient or provide SONGA with an opportunity to remedy or explain the deficiency, as required by 19 U.S.C. § 1677m(d).

13

48.     Commerce applied AFA to determine benefits received by SONGA under the ISD tax exemptions on imported inputs incident to the investment contract program in 2022 because it determined that SONGA failed to cooperate to the best of its ability by not providing the requested data on ISD tax exemptions on imported inputs received in 2022 at the time it was requested by Commerce and by failing to provide the corrected data prior to verification.  *IDM* at 72-73.

49.     Commerce's determination to apply AFA to determine benefits received in 2022 by SONGA under the ISD tax exemptions on imported inputs incident to its investment contract was contrary to law .

## COUNT SEVEN

50.     Plaintiffs hereby reallege and incorporate paragraphs 1 through 49.

51.     Commerce applied the third step of its AFA rate selection hierarchy in CVD investigations (i.e., the highest calculated rate for a similar program) to calculate benefits for SONGA under the ISD tax exemptions on imported inputs incident to the investment contract program.  *IDM* at 39.  In applying the third step of its AFA rate selection hierarchy in CVD investigations, Commerce assigned the 1.38 percent *ad valorem* rate assigned to Santa Priscila, and its cross-owned affiliate Produmar, for benefits received under an *income* tax exemption on income generated by new productive investments because Commerce concluded that this rate was the highest above-*de minimis* rate for a similar program in the CVD investigation.  *Id.*

52.     Commerce's application of the unduly punitive and dissimilar calculated rate for the *income* tax exemption on new productive investments received by Santa Priscila, and its cross-owned affiliate, Produmar (i.e., 1.38 percent), as AFA to calculate SONGA's benefits under

the *ISD* tax exemptions on imported inputs was not supported by substantial evidence and was not in accordance with law.

### **REQUEST FOR JUDGMENT AND RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court:

1) enter judgment in Plaintiffs' favor;

2) declare that with respect to the issues raised in this Complaint, certain aspects of Commerce's final determination in the countervailing duty investigation of frozen warmwater shrimp from Ecuador are not supported by substantial evidence on the record or are not otherwise in accordance with law; and

3) Remand the final determination to Commerce for redetermination in accordance with the Court's final opinion, including a recalculation of the *ad valorem* countervailable subsidy rates for Plaintiffs and All Others; and

4) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Warren E. Connelly
Jarrod M. Goldfeder
Warren E. Connelly
Kenneth N. Hammer

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington D.C. 20003
Tel: (202) 223-3760
wconnelly@tradepacificlaw.com

*Counsel to Plaintiffs Industrial Pesquera*
*Santa Priscila S.A. and Sociedad Nacional*
*De Galápagos C.A.*

Dated: February 18, 2025