UNITED STATES COURT OF INTERNATIONAL TRADE
Before: The Honorable Richard K. Eaton, Senior Judge

| | |
|---|---|
| INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and SOCIEDAD NACIONAL DE GALÁPAGOS C.A., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PROCESSORS ASSOCIATION, <br><br> *Defendant-Intervenors.* | Consol. Court No. 25-00025 |

**AMERICAN SHRIMP PROCESSORS ASSOCIATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE THE AGENCY RECORD**

Defendant-Intervenor American Shrimp Processors Association ("ASPA") respectfully submits this response in opposition to the motion to complete the agency record filed by Plaintiffs Industrial Pesquera Santa Priscila S.A. ("Santa Priscila") and Sociedad Nacional de Galápagos C.A. ("SONGA") (collectively, "Plaintiffs") in the above-captioned consolidated action. *See* Pls.' Confidential R. 73.2(b) Mot. to Complete the Agency R., ECF No. 46 (Aug. 29, 2025) ("Pls.' Mot."). Plaintiffs have not provided any explanation to justify their unreasonably dilatory conduct in filing this motion *after* their opening brief and nearly *five months* after the filing of the certified administrative record index. *See* Pls.' R. 56.2 Mot. for J. on the Agency R., ECF No. 44 (Aug. 26, 2025) ("Pls.' Rule 56.2 Br."). Nonetheless, as demonstrated below, Plaintiffs have failed to demonstrate that the documents they seek to include in the record are

necessary for the Court to perform its function or that the absence of these documents frustrates judicial review. The Court should therefore deny Plaintiffs' motion to "complete" the agency record with content from materials that the U.S. Department of Commerce ("Commerce") did not consider in making its final determination.

## ARGUMENT

**I.      THE RECORD FOR REVIEW AND COMMERCE'S RECORDKEEPING OBLIGATIONS DURING VERIFICATION**

The record for review is defined to include "a copy of all information presented to or obtained by {Commerce} … during the course of the administrative proceeding{.}" 19 U.S.C. § 1516a(b)(2)(A)(i). This definition does not encompass *all* information without regard to Commerce's procedural rules for when and how information must be presented to the agency to ensure it will become part of the record. Indeed, the statutory framework authorizes Commerce to decline to accept or consider information that does not satisfy these procedural rules. *See* 19 U.S.C. § 1677m(d) and (f); *see also Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342 (Fed. Cir. 2021) (recognizing Commerce's discretion to establish procedural rules governing the submission of information). Generally, Commerce solicits information from respondents through questionnaires and the factual record closes before the preliminary determination. *See* 19 C.F.R. § 351.301(c). Untimely filed or unsolicited information is rejected and not considered by Commerce as part of the record. *See* 19 C.F.R. § 351.302(d). "Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has long recognized

2

that Commerce is given wide latitude in its verification procedures. *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)). The purpose of verification is to test the accuracy of information submitted by the respondent during the information collection phase of the investigation; it is not an opportunity for the respondent to cure deficiencies in the previously reported information. *See Goodluck*, 11 F.4th at 1343–44. This is why Commerce accepts new information at verification in very limited circumstances. Specifically, as stated in Commerce's standard verification agenda, new information may be accepted at verification only if: (1) the need for that information was not evident previously; (2) the information makes minor corrections to information already on the record; or (3) the information corroborates, supports, or clarifies information already on the record. *See id*. at 1339. Any new information that does not meet Commerce's criteria is not accepted and does not constitute part of the administrative record under 19 U.S.C. § 1516a(b)(2)(A)(i). Commerce's criteria for accepting or rejecting information presented during verification are applied on a case-by-case basis, are consistent with the agency's statutory recordkeeping obligations, and have been endorsed by the Federal Circuit. *See Goodluck*, 11 F.4th at 1342–44.

## II. PLAINTIFFS FILED THIS APPEAL TO CHALLENGE COMMERCE'S DECISION NOT TO ACCEPT NEW INFORMATION AT VERIFICATION AS MINOR CORRECTIONS

Plaintiffs challenge certain aspects of Commerce's final affirmative determination in the countervailing duty investigation on imports of frozen warmwater shrimp from Ecuador. *See* Compl. ¶1, ECF No. 13 (Feb. 18, 2025). In relevant part, counts three and five of Plaintiffs' complaint contest Commerce's verification procedures and its decision not to accept new data from Santa Priscila (including cross-owned shrimp supplier Produmar) and SONGA (including cross-owned shrimp supplier Naturisa) as minor corrections to previously reported data, which

eventually led to Commerce's ultimate decision to apply adverse facts available ("AFA") to determine each respondent's net subsidy rate under the "Motor Vehicle Tax Reduction" program and the "Investment Contract – ISD Exemption for Imported Materials" program. *Id.* ¶¶ 36–37 and 44–45. Plaintiffs claim that the new data proffered during verification met the criteria for a minor correction and Commerce's rejection of the data is not supported by substantial evidence or in accordance with law.

Pursuant to the Court's instructions, Plaintiffs filed their statement of the issues and provided additional details regarding the claims for which Plaintiffs seek judicial review. *See* Pls.' Statement of the Issues, ECF No. 33 (Apr. 30, 2025). Plaintiffs identified a total of seven issues that appear to correspond to the counts in Plaintiffs' complaint. Plaintiffs provided the following statement for issue number three: "Commerce erroneously failed to accept at verification minor corrections concerning the usage of the AMVTR Program submitted by Produmar, which was Santa Priscila's affiliated company, as well as by SONGA and by Naturisa which was SONGA's affiliated company." *Id.* at 3–4. The statement for issue number five was as follows: "Commerce erroneously declined to accept SONGA's minor corrections at verification related to ISD tax exemptions on imported inputs that it received in 2022 on imported inputs incident to its investment contract and instead assigned an AFA rate of 1.38%." *Id.* at 5.

### III. PLAINTIFFS HAVE NOT PROVIDED ANY EXPLANATION TO JUSTIFY THEIR DILATORY CONDUCT IN FILING THEIR MOTION TO COMPLETE THE ADMINISTRATIVE RECORD

ASPA strongly objects to the timing of Plaintiffs' motion to complete the administrative record. Plaintiffs filed their complaint on February 18, 2025. The allegations in the complaint make clear that Plaintiffs intended to challenge Commerce's refusal to accept new information at verification. On March 31, 2025, in accordance with USCIT Rule 73.2(b), Commerce submitted a certified index that provided the Court with a "*complete* list of the public and proprietary

documents" from the underlying investigation that constitute the administrative record for purposes of judicial review. *See* Declaration of Reginald Anadio, ECF No. 27-3 (Mar. 31, 2025) (emphasis added). It is presumed that the certified index constitutes the complete record. *See Southern Cross Seafoods, LLC v. United States*, 658 F. Supp. 3d 1336, 1340–41 (Ct. Int'l Trade 2023). All parties have litigated this matter with the understanding that Commerce submitted a certified and complete index of the record on March 31, 2025.

Plaintiffs submitted their motion to complete the administrative record almost *five months* after Commerce submitted the certified administrative record index. During that five-month period, Plaintiffs filed their statement of the issues and did not inform the Court of any concerns regarding the completeness of the administrative record. *See* Pls.' Statement of the Issues, ECF No. 33 (Apr. 30, 2025). The parties also filed the joint status report and proposed briefing schedule, which was another opportunity for Plaintiffs to inform the Court regarding their position that additional documents should be included in the record. *See* Joint Status Report and Proposed Briefing Schedule, ECF No. 32 (Apr. 30, 2025). Plaintiffs framed their motion as a request pursuant to Rule 73.2(b). That rule treats the administrative record as a preliminary matter and requires the agency to file the administrative record within 40 days after the date of service of the complaint. *See* USCIT R. 73.2(b)(1). Plaintiffs should have raised their concerns with the completeness of the administrative record in the joint status report. *See* USCIT R. 56.2(a)(5)(A) (instructing parties to advise the Court of any preliminary matters in the joint status report). However, Plaintiffs failed to do so, and the parties collectively stated that they "are not aware of any other information that requires this Court's attention at this time." *See* Joint Status Report and Proposed Briefing Schedule, ECF No. 32.

Any litigant that believes the administrative record filed by the agency is incomplete

should be required to take prompt action. Plaintiffs have not provided any explanation regarding why they waited to file their motion to complete the administrative record until three days after the filing of dispositive motions and opening briefs. The administrative record should not be in flux while the parties are in the middle of briefing the merits of the case. Whether the delay was intentional or not, "{a}sking the Court for permission to consider additional materials {on or after} the very day on which the dispositive motions are filed is simply too late" and "{l}ast minute surprises regarding materials on which Plaintiffs hope to rely are neither efficient nor fair." *Banner Health v. Burwell*, 126 F. Supp. 3d 28, 61 (D.D.C. 2015), *aff'd in part and rev'd in part on other grounds*, 867 F.3d 1323 (D.C. Cir. 2017). The bottom line is that Plaintiffs should have submitted their motion months ago, and the Court should not excuse their dilatory conduct.

## IV.   PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE ADDITIONAL DOCUMENTS ARE NECESSARY FOR EFFECTIVE JUDICIAL REVIEW

Putting aside the fact that the timing of Plaintiffs' motion violates notions of basic fairness, Plaintiffs' motion is also devoid of merit. Plaintiffs incorrectly assert that the record must include three packages of documents that were proffered at verification as minor corrections to allow for meaningful judicial review under the substantial evidence standard. *See* Pls.' Mot. at 3–7. There is no legal requirement for the administrative record to include the documents "that would permit other parties to recreate Commerce's verification" and "not all the documents reviewed in the verification process are made part of the record{.}" *Micron*, 117 F.3d at 1397. Indeed, on multiple occasions, the Court has been called upon to review Commerce's rejection of new information at verification and has sustained the agency's decision even though the rejected information was not included as part of the record.

For example, in *SeAH Steel Corp. v. United States*, mandatory respondent SeAH Steel Corporation challenged Commerce's decision to reject new information regarding the company's

usage of the Korean Export-Import Bank Performance Guarantee program that was first presented at verification. *See* 659 F. Supp. 3d 1318, 1324 (Ct. Int'l Trade 2023). There was no need for the Court to examine the content of the rejected material. The Commerce verifiers' observations and contemporaneous account of the events that took place at verification were more than sufficient to allow for meaningful and effective judicial review. *See id.* at 1322–23 ("On September 1, 2022, Commerce issued its verification report, which documented that SeAH offered information demonstrating that the company had an outstanding KEXIM performance guarantee during the POI."). The Federal Circuit has also affirmed Commerce's rejection of new information at verification as supported by substantial evidence based on Commerce's rationale for rejecting the new information as explained in the final decision memorandum. *See Goodluck*, 11 F.4th at 1343 (citing to the final decision memorandum which substantiated the rejection and stated that the CONNUM coding errors "resulted in 24 misreported CONNUMs and 13 unreported CONNUMs, thereby resulting in misreported CONNUMs for 682 sales in Goodluck's home market database.").

Here, just as was the case in *SeAH Steel Corp.* and *Goodluck*, Commerce's verification report and final decision memorandum contain all the information that the Court needs to perform its function and apply the substantial evidence standard of review. *See Frozen Warmwater Shrimp from Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Dep't Commerce Oct. 28, 2024) and accompanying Issues and Decision Memorandum at Comments 5, 10, and 16; Santa Priscila Verification Report at 2, P.R. 421, C.R. 314 (Aug. 26, 2024); SONGA Verification Report, P.R. 420, C.R. 313 (Aug. 14, 2024); *see also* Pls.' Mot. at 2–3 (providing excerpts from the verification reports). The extraordinary relief that Plaintiffs seek is seldom granted. Plaintiffs claim that three prior court decisions support their

motion to complete the record. *See* Pls.' Mot. at 5–7. These cases are inapposite and do not explicitly state or otherwise imply that the administrative record must always include corrective information that is rejected at verification.

To start, two of the three decisions that Plaintiffs rely upon were issued before the Federal Circuit's precedential decision in *Goodluck*, which made clear that Commerce's rejection of corrective information at verification can be reviewed (and sustained) under the substantial evidence standard without having the rejected material on the record. Plaintiffs also misread the two decisions. The facts in *Guizhou Tyre Co. v. United States* were entirely different because Commerce confronted new evidence regarding unreported grants under other potentially countervailable programs, but the exact number of unreported grants was not clear and there was no other information on the record regarding the nature of these programs. *See* 523 F. Supp. 3d 1312, 1348–49 (Ct. Int'l Trade 2021). Here, however, Commerce rejected usage information regarding subsidy programs that were extensively examined throughout the investigation and the record contains the pertinent details for these subsidy programs. In addition, unlike in *Guizhou Tyre*, where Commerce simply noted the receipt of "more than 40 grants," here, Commerce fully explained that it reasonably exercised its discretion because the new information presented under the guise of a minor correction would have resulted in a wholesale substitution of the originally reported information. It is also worth noting that the Court in *Guizhou Tyre* separately held that Commerce substantiated its rejection of new loan information presented at verification, despite the fact that the rejected information was not on the record. *Id.* at 1348. Plaintiffs' reliance on *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States* is also unavailing. *See* 308 F. Supp. 3d 1297, 1328 (Ct. Int'l Trade 2018). After remanding the case for further explanation, the Court ultimately sustained Commerce's rejection of corrective information at verification and never

indicated that the rejected material should have been included as part of the administrative record. *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 357 F. Supp. 3d 1325, 1335–36 (Ct. Int'l Trade 2018).

Plaintiffs also erroneously rely on the Court's recent decision in *Bridgestone Americas Tire Operations, LLC v. United States*, 2025 WL 1872048 (Ct. Int'l Trade July 3, 2025). The plaintiff in that case timely filed their motion at a much earlier stage in litigation and before Rule 56.2 briefing. Also, the Court explained that it "must *sometimes* review administratively excluded material to determine the lawfulness of its exclusion." *Id.* at *7 (emphasis added). The *Bridgestone* case was a rare instance in which the rejected material needed to be on the record for the Court's review. The three rejected documents at issue in *Bridgestone* were not presented to Commerce as minor corrections at the start of verification. They were provided at Commerce's request as a means of testing the accuracy and completeness of the questionnaire response data. Commerce ultimately applied total AFA to the plaintiff in part because the plaintiff did not act to the best of its ability to comply with Commerce's requests at verification for internal company documents to support the reported sales data. In the pending litigation, the plaintiff challenges the accuracy of Commerce's account of events that took place during verification and disputes Commerce's conclusion that the plaintiff failed to provide Commerce with the information that it requested. The same factual issues regarding the level of cooperation *during* verification are not before the Court in this case. Plaintiffs also do not contend that Commerce misconstrued the rejected information. Plaintiffs merely disagree with Commerce's conclusion that the rejected information did not fall within Commerce's definition of a minor correction. The issue in this case is like the issue before the Court in *SeAH Steel Corp.* and the Federal Circuit in *Goodluck*. In both of those cases, Commerce provided sufficient information

in the final decision memorandum and verification reports, and substantial evidence supported the agency's decision to reject the documents. There was no need for the Court to review the content of the rejected documents in order to determine that the decision to reject those documents was supported by substantial evidence and not an abuse of discretion. The same is true here.

In sum, Plaintiffs have not shown why the materials they seek to include in the record are necessary for the Court to perform its function nor how the absence of these particular materials somehow precludes effective judicial review. In fact, Plaintiffs cannot make such a showing. In their opening brief, Plaintiffs did not need to reference the content in any of the rejected documents and even admit that the materials in the existing record are sufficient to rule in their favor. *See* Pls.' Rule 56.2 Br. at 14–15 (referencing materials in administrative case and rebuttal briefs) and 27 ("Even though Commerce denied Songa's request to include its minor correction submission in the record so that this Court could consider its relevance, Songa's redacted and refiled combined Rebuttal Brief (at 71) contains sufficient information to allow this Court to find that the agency abused its discretion by failing to accept the minor corrections."). Thus, even according to Plaintiffs, there is no need to include these additional documents in the record.

## V.    CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' motion to complete the agency record.

*     *     *

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Elizabeth J. Drake |
|  | Roger B. Schagrin |
|  | Elizabeth J. Drake |
|  | Saad Y. Chalchal* |
|  |  |
|  | **SCHAGRIN ASSOCIATES** |
|  | 900 7th Street, N.W. |
|  | Suite 500 |
|  | Washington, DC 20001 |
|  | (202) 223-1700 |
|  |  |
|  | *Counsel to American Shrimp Processors Association* |
| Dated: September 17, 2025 | *Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies. |

**CERTIFICATE OF COMPLIANCE**

      I hereby certify that the foregoing submission contains 2,930 words (including text, quotations, footnotes, headings, and attachments). In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


Dated: September 17, 2025                                           /s/ Elizabeth J. Drake
                                                                                        Elizabeth J. Drake

UNITED STATES COURT OF INTERNATIONAL TRADE
Before: The Honorable Richard K. Eaton, Senior Judge

| | |
|---|---|
| INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and SOCIEDAD NACIONAL DE GALÁPAGOS C.A., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PROCESSORS ASSOCIATION, <br><br> *Defendant-Intervenors.* | Consol. Court No. 25-00025 |

**ORDER**

Upon consideration of the motion to complete the agency record filed by plaintiffs Industrial Pesquera Santa Priscila S.A. and Sociedad Nacional de Galápagos C.A. (the "plaintiffs"), the responses thereto filed by the defendant and the defendant-intervenors, all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the plaintiffs' motion is **DENIED**; and it is further

**ORDERED** that the exhibits accompanying the plaintiffs' motion (ECF Nos. 46-1 through 46-6) shall be struck from the docket and shall not be considered part of the record.

**SO ORDERED**.

_____
Honorable Richard K. Eaton, Senior Judge
U.S. Court of International Trade

Dated: _____, 2025
      New York, New York