**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE RICHARD K. EATON, JUDGE**

| | |
|---|---|
| **INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and SOCIEDAD NACIONAL DE GALÁPAGOS C.A.,** | |
| Plaintiffs, | |
| and | |
| **AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Consolidated Plaintiff, | |
| and | |
| **AD HOC SHRIMP TRADE ACTION COMMITTEE,** | |
| Consolidated Pl.-Intervenor, | **Consol. Court No. 25-00025** |
| v. | |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **AD HOC SHRIMP TRADE ACTION COMMITTEE and AMERICAN SHRIMP PROCESSORS ASSOCIATION,** | |
| Defendant-Intervenors, | |
| and | |
| **INDUSTRIAL PESQUERA SANTA PRISCILA S.A. and SOCIEDAD NACIONAL DE GALÁPAGOS C.A.,** | |
| Consolidated Def.-Intervenors. | |

## REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Nathaniel Maandig Rickard
Zachary J. Walker
Anjelika D. Jani

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave., NW
Washington, DC 20036
(202) 331-5040

*Counsel to Ad Hoc Shrimp Trade*
  *Action Committee*

April 13, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT.................................................................................................................... 1

    I.      Commerce Unlawfully Found that the Provision of Brackish Water Did Not Provide a Financial Contribution.................................................................. 1

           A.     Commerce's Statutory Interpretation Must Be Rejected ................................... 2

           B.     Commerce's Decision Departs Without Justification from Agency Practice..... 6

CONCLUSION.................................................................................................................. 8

## TABLE OF AUTHORITIES

### Cases

*Hyundai Steel Co. v. United States*,
  745 F. Supp. 3d 1345 (Ct. Int'l Trade 2024) ................................................................ 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ........................................................................................................ 6

*Timken Co. v. United States*,
  894 F.2d 385 (Fed. Cir. 1990) ...................................................................................... 3

### Statutes

19 U.S.C. § 1677(5) ........................................................................................................... 3

19 U.S.C. § 1677(5)(D)(iii) ............................................................................................. 3, 6

### Administrative Determinations

*Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty
  Determination*, 89 Fed. Reg. 85,506 (Dep't Commerce Oct. 28, 2024) ................................ 1, 5

*Phosphate Fertilizers From the Russian Federation: Final Results of Countervailing Duty
  Administrative Review; 2020-2021*, 88 Fed. Reg. 76,182 (Dep't Commerce Nov. 6, 2023) ..... 7

### Other Authorities

Statement of Administrative Action, H.R. Doc. 103-316 (1994) ....................................... 4

**INTRODUCTION**

Plaintiff-Intervenor Ad Hoc Shrimp Trade Action Committee ("AHSTAC" or "Domestic Producers") submits this reply to the response briefs of Defendant United States and Defendant-Intervenors Industrial Pesquera Santa Priscila, S.A. ("Santa Priscila") and Sociedad Nacional de Galapagos, C.A. ("Songa") (collectively, the "Ecuadorian Parties"). *See* Def.'s Resp. to Pls.' Mots. for J. Upon the Agency R., Mar. 13, 2026 ("Def. Resp."), ECF 73 (conf.), ECF 77 (public); Pls.' Resp. to the Rule 56.2 Mots. of ASPA and AHSTAC, Mar. 13, 2026 ("Ecuadorian Parties Resp."), ECF 71 (conf.), ECF 72 (public). As demonstrated below, there is no merit to the arguments supporting Commerce's finding that the provision of brackish water did not provide a financial contribution.[1] Accordingly, the Court should hold that the U.S. Department of Commerce's ("Commerce") decision that government-provided access to brackish water from public water sources does not constitute a financial contribution is unsupported by substantial evidence and otherwise not in accordance with law.

**ARGUMENT**

I.     **COMMERCE UNLAWFULLY FOUND THAT THE PROVISION OF BRACKISH WATER DID NOT PROVIDE A FINANCIAL CONTRIBUTION**

In the contested final determination, Commerce found that the Government of Ecuador's ("GOE") provision of brackish water was not countervailable. *See Frozen Warmwater Shrimp From Ecuador: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 85,506 (Dep't Commerce Oct. 28, 2024) ("*Final Determination*"), P.R. 459. In reaching this

---

[1] Domestic Producers incorporate by reference the arguments presented in the reply brief filed by the American Shrimp Processors Association ("ASPA"). *See* Am. Shrimp Processors Assoc.'s Reply in Support of Rule 56.2 Mot. for J. on the Agency R., Apr. 13. 2026, ECF 82 (conf.), ECF 83 (public). Domestic Producers submit this separate reply on the single issue of whether Commerce erred when it concluded that the provision of brackish water did not constitute a financial contribution.

Consol. Court No. 25-00025

determination, Commerce improperly applied the statute by relying on respondents' characterization of their usage of brackish water as "non-consumptive." *See* Commerce Memorandum, re: *Issues and Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Frozen Warmwater Shrimp from Ecuador* ("IDM"), at Comment 1, P.R. 456; *see also* Commerce Memorandum, re: *Post-Preliminary Analysis* (July 12, 2024) ("First Post-Preliminary Determination"), at 16-17 (finding that the respondents' "usage of brackish water was non-consumptive in nature"), P.R. 400.  Commerce further erred by departing from prior agency determinations that recognize value in the right to access government-owned resources.  Thus, as explained below, the Court must remand Commerce's determination so that the agency can reconsider its erroneous conclusion that government-provided access to brackish water from public water sources does not constitute a financial contribution.

A.    **Commerce's Statutory Interpretation Must Be Rejected**

The opening brief filed by the American Shrimp Processors Association ("ASPA") demonstrated that Commerce erred in concluding that the GOE's provision of brackish water is not countervailable.  *See* Pl. Am. Shrimp Processors Assoc.'s Rule 56.2 Mot. for J. on the Agency R. 30-35, Aug. 26, 2025 ("ASPA Br."), ECF 41 (conf.), ECF 42 (public).  Specifically, ASPA established that the right to brackish water is a financial contribution under section 771 of the Act.  *See id.* at 31 (noting that Commerce has interpreted section 771(5)(D)(iii) of the Act as encompassing a government giving private entities the right to access government-owned resources (citations omitted)).

Attempting to defend Commerce's determination, the Government continues to rely upon a conclusion that the respondents' use of brackish water is "non-consumptive" because the "respondents return the water to its source." Def. Resp. 53 (citations omitted).  The Government

2

**Consol. Court No. 25-00025**

also maintains that the fact that "the GOE did not charge a fee for non-consumptive use" is relevant to the question of whether there is a financial contribution within the meaning of section 771(5)(D)(iii) of the Act. *Id.* at 53. As explained below, the Department's emphasis on "non-consumptive use" creates an exception that is at odds with the statute.

A countervailable subsidy exists, generally, where an authority provides a financial contribution to a person and a benefit is thereby conferred, and the subsidy meets the specificity requirement of the statute. *See* 19 U.S.C. § 1677(5). The statute defines the term "financial contribution" as including the provision of "goods or services." *Id.* § 1677(5)(D)(iii); *see also Hyundai Steel Co. v. United States*, 745 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2024) (noting that governments "can provide financial contributions in several ways").

Commerce erred in the final results by unreasonably concluding that section 771(5)(D)(iii) of the Act does not apply to the brackish water made available to respondents at no charge because the provision of the good was temporary in nature (i.e., that the respondents "return{ed} the water to its source"). *See* Def. Resp. 53.[2] Importantly, the record demonstrates that brackish water is essential to the respondents' ability to raise shrimp. *See, e.g.*, Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Santa Priscila's New Subsidy Allegations Questionnaire Response* (Apr. 19, 2024) (noting that brackish water is used "to fill the shrimp

---

[2] Inconsistent with the record in the underlying proceeding, the Ecuadorian Parties claim in their brief that the GOE "did not provide 'access' to a good." Ecuadorian Parties Resp. 28. This statement is incorrect and does not reflect Commerce's final determination where the agency found that the GOE "requires" that users of water "obtain an authorization from the Ecuadorean Ministry of Environment, Water, and Ecological Transition (MAATE) to extract water from a 'public source.'" IDM at 21 (quoting First Post-Preliminary Determination at 16), P.R. 456. A finding that was not made by the agency but is, instead, presented by Ecuadorian Parties' counsel cannot provide a basis to sustain Commerce's determination. *See, e.g., Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990) ("{A}gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review." (citations omitted)).

Consol. Court No. 25-00025

ponds where the shrimp are raised"), at NSA-17, C.R. 212, P.R. 319; *see also* Ecuadorian Parties Resp. 18 (acknowledging that "{a}ccess to sufficient supplies of brackish water is the essential precondition to successful shrimp aquaculture").

The statutory language provides no support for Commerce's focus on the temporary nature of the GOE's provision of brackish water. Rather, section 771(5)(D) is best read as giving Commerce the authority to address the wide range of ways in which a government may provide a financial contribution. *See* Statement of Administrative Action, H.R. Doc. 103-316, at 927 (1994). Commerce failed to exercise its authority in a reasonable manner because its flawed financial contribution analysis ignores the significance of access to brackish water at no charge to Ecuadorian shrimp producers.

As noted above, the respondents' ability to raise shrimp is intrinsically linked to the GOE's provision of brackish water. Article 318 of Ecuador's constitution states that water "is the unalienable property of the State," and declares that "{t}he State . . . shall be directly responsible for planning and managing water resources for human consumption, irrigation to guarantee food sovereignty, ecological wealth and productive activities." *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Government of Ecuador's Section II Response* (Feb. 15, 2024) ("GOE Sec. II Resp."), at Exhibit TAX-4(a), C.R. 91, P.R. 188. Moreover, as acknowledged by the GOE, Ecuador's water resources law expressly requires authorization to use brackish water:

> Article 93 of the 2014 Organic Law on Water Resources, Use and Development of Water . . . requires all productive users, not just consumptive users, intending to extract any type of water from any public source, including rivers, oceans, streams, springs, aquifers, salt pans, and other coastal water sources, to obtain an authorization from the Ministry of the Environment, Water, and Ecological Transition ("MAATE").

4

**Consol. Court No. 25-00025**

Letter from Trade Pacific PLLC to Sec'y Commerce, re: *Government of Ecuador's Second Post-Preliminary Supplemental Questionnaire Response* (June 12, 2024), at S4-1 – S4-2, C.R. 249, P.R. 389; *see also* GOE Sec. II Resp. at Exhibit Tax-4(b) ("The authorization for the use of water in productive activities confers on the holder thereof, exclusively, the capacity for the collection, treatment, conduction and use of the flow to which the authorization refers."), C.R. 91, P.R. 188. Thus, the record shows that Ecuadorian shrimp producers must obtain authorization from the MAATE before using brackish water regardless of whether the water is returned to the source and that this authorization confers on the holder an exclusive right to collect the government-owned resource. Accordingly, by authorizing the right to extract water from a public source, the GOE provides Ecuadorian shrimp producers a right of access.

Commerce's final determination departed from the plain language of the statute by creating a "non-consumptive" exception to the government provision of goods. In focusing on the fact that the water was "subsequently return{ed}," *see* IDM at 20, P.R. 456, Commerce overlooked the argument that the access to brackish water provided by the GOE was itself of commercial value to the Ecuadorian respondents who depend on access to this government-owned resource to raise shrimp.[3] In other words, the fact that the water was "subsequently return{ed}" to the source without the water molecules being destroyed ignores the value inherent in a government authorizing a right to use the resource (regardless of whether possession was permanent). Thus, the record shows that a good (i.e., brackish water) was provided by the GOE

---

[3] The value of the brackish water provided by the GOE to the Ecuadorian respondents is evidenced by SONGA's comparison of the brackish water used for growing shrimp to the "dirt on a farm" used by farmers to grow crops. *See* Letter from Trade Pacific PLLC to Sec'y Commerce, re: *SONGA's New Subsidy Allegations Questionnaire Response* (Apr. 19, 2024), at NSA-18, C.R. 207, P.R. 316. As Songa admits, the ability to raise shrimp is only possible because of the right of access to brackish water authorized by the GOE.

Consol. Court No. 25-00025

and put to a particular commercial purpose by the Ecuadorian producers.  By failing to consider this "important aspect of the problem," Commerce's decision is arbitrary and unlawful.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

> **B.        Commerce's Decision Departs Without Justification from Agency Practice**

ASPA's opening brief explained that Commerce has interpreted section 771(5)(D)(iii) of the Act as "encompass{ing} the provision of the good itself and making the good available through a right of access."  *See* ASPA Br. 31, 33-34 (citations omitted).  Specifically, ASPA pointed to Commerce's decisions in *Phosphate Fertilizers from Russia* and *Certain Softwood Lumber Products from Canada* as examples where Commerce has found a government authorizing "the right to use or access" a good as constituting a financial contribution.  *Id.* 33-34.  The Government's response brief claims that those cases are distinguishable because "{n}either . . . addresses non-consumption."  Def. Resp. 52; *see also* Ecuadorian Parties Resp. 29 (arguing that the cases cited by ASPA are distinguishable because the good provided by the GOE was "returned to the water sources . . . after it was non-consumptively used").

As an initial matter, the significance afforded to non-consumption is unreasonable as the brackish water provided by the GOE was, in fact, put to commercial use by Ecuadorian shrimp producers as explained above.

Moreover, the Government's attempt to distinguish the authorization to extract water at issue in this case from the mining rights at issue in *Phosphate Fertilizers from Russia* or the stumpage rights at issue in *Certain Softwood Lumber Products from Canada* by focusing on the fact that the GOE does not charge a fee for non-consumptive use of water is similarly unpersuasive.[4]  *See* Def. Resp. 53.

---

[4]  In arguing that "{t}he lack of a fee for non-consumptive use of the brackish water reinforces Commerce's conclusion that no financial contribution," the Government seems to

Consol. Court No. 25-00025

In *Phosphate Fertilizers from Russia*, Commerce determined that the Government of Russia's ("GOR") provision of mining rights constituted a financial contribution within the meaning of section 771(5)(D)(iii) of the Act. *See Phosphate Fertilizers From the Russian Federation: Final Results of Countervailing Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 76,182 (Dep't Commerce Nov. 6, 2023), and accompanying IDM at Comment 2a (ACCESS Barcode 4455920-02). Commerce reasoned in that proceeding that because subsoil resources are the property of the State and companies "must obtain a license . . . to extract subsoil resources," that the GOR provided the respondent a financial contribution. *Id.* Like *Phosphate Fertilizers From Russia*, the respondents in this case were required to obtain authorization to extract the brackish water necessary for their production of shrimp. Thus, similar to the permits to mine (or harvest standing timber), the authorizations issued by the GOE provide access to a natural resource owned by the government. As such, the Defendants' attempts to distinguish this case from other proceedings where Commerce has found the right to access to constitute a financial contribution must be rejected.

---

suggest that Commerce may have found a financial contribution if the GOE charged a fee for the use of brackish water. *See* Def. Resp. 53. This statement reflects the bootstrapping error of Commerce's analysis.

**Consol. Court No. 25-00025**

## CONCLUSION

For the foregoing reasons and the reasons set forth in the opening brief filed by ASPA, Domestic Producers request that this Court: (i) hold that Commerce's determination that the provision of brackish water does not constitute a financial contribution that provides a countervailable benefit is unsupported by substantial evidence and otherwise not in accordance with law; and (ii) remand Commerce's *Final Results* with instructions to issue a new determination consistent with the Court's decision.

Respectfully submitted,

*/s/ Nathaniel Maandig Rickard*

Nathaniel Maandig Rickard
Zachary J. Walker
Anjelika D. Jani

**PICARD KENTZ & ROWE LLP**
*Counsel to Ad Hoc Shrimp Trade
   Action Committee*

Dated: April 13, 2026

8

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this brief complies with the 9,000 word-count limit set by the Court.  *See* ECF 79.  Specifically, this brief contains 2,212 words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's signature block.

Respectfully submitted,

*/s/ Nathaniel Maandig Rickard*
Nathaniel Maandig Rickard

**PICARD KENTZ & ROWE LLP**
*Counsel to Ad Hoc Shrimp Trade
Action Committee*

Dated: April 13, 2026